**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **SHAMEELA ROME,** | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES** |
| **ROCKET MORTGAGE, LLC, f.k.a. QUICKEN LOANS, LLC,** | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | |

Plaintiff Shameela Rome, through counsel, states as follows for her *Complaint for Damages* against Defendant Rocket Mortgage, LLC, f.k.a. Quicken Mortgage, LLC (the "Complaint"):

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Shameela Rome ("Plaintiff" or "Rome") is the owner of the real property and improvements thereupon located at and commonly known as 1309 Barrier Island Drive, Aubrey, TX 76227-1244 (the "Home").

2.      Rome currently occupies and maintains the Home as her primary, principal residence and has maintained the Home as such for all times relevant to the causes of action pleaded in this Complaint.

3.      On or about March 27, 2017, Rome executed a promissory note (the "Note") and a mortgage on the Home purportedly securing the Note (the "Mortgage") (collectively, the "Loan").

4.      Defendant Rocket Mortgage, LLC, f.k.a. Quicken Mortgage, LLC ("Defendant" or "Rocket") is a foreign corporation, incorporated under the laws of the State of Michigan, licensed to do business in the State of Texas, with its headquarters located in Detroit, Michigan.

5.     Rocket currently services the Loan on behalf of the current creditor, owner, and/or assignee of the Loan—an entity other than itself previously identified as and believed to be U.S. Bank Trust National Association, as Trustee of the Preston Ridge Partners Investments II Trust (the "Trust").

6.     Rocket has serviced the Loan at all times relevant to the allegations in this Complaint.

7.     On information and belief, Rocket is the creditor and/or current assignee of the Loan.[1]

8.     Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA"), and the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq*. ("TILA").

9.     This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

10.     Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

### SUMMARY OF STATUTORY CAUSES OF ACTION

11.     This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective

---

[1] As alleged, *infra*, Rome has attempted to verify this information with Rocket on numerous occasions, but Rocket has failed to abide by their obligations under applicable federal law to confirm this information.

on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X") and 12 C.F.R. § 1026.1, *et seq.* ("Regulation Z").

12.     The CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010), specifically the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) and the Mortgage servicing Rules Under the Truth in Lending Act, 78 F.R. 10901 (February 14, 2013) (Regulation Z), each which became effective on January 10, 2014.

13.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[2]." 12 U.S.C. § 2605(k)(1)(C).

14.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

15.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

---

[2] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute* '*servicing,' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10696, 10739 (emphasis added).

16.     Rocket is subject to the aforesaid regulations and is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

17.     Rome asserts a claim for relief against Rocket for violations of the specific rules under RESPA and Regulation X, as set forth, *infra.*

18.     Rome has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

19.     TILA provides that a creditor or servicer of a home loan shall provide an *accurate* payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

20.     Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

21.     Regarding payoff statements, Regulation Z provides that:

In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

22.     The Loan is a closed-end consumer credit transaction secured by their respective dwellings as contemplated by TILA and Regulation Z. 15 U.S.C. § 1602; 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

23.     Rocket is the creditor of the Loan as defined and contemplated by TILA and Regulation Z as it succeeded to the interests of the original lender, HSB, as the surviving entity of their merger.

24.     Rome asserts claims for relief against Rocket for violations of the specific rules under Regulation Z, as set forth, *infra*.

25.     Rome has a private right action under TILA pursuant to 15 U.S.C. § 1640(a) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

### STATEMENT OF FACTS

### (Mortgage Insurance Premium Issue)

26.     At the time of the origination of the Loan, Rocket incorrectly determined the amount of the Mortgage Insurance Premium (MIP) that Rome was required to remit as a portion of her monthly payment obligations under the Loan.

27.     At the origination of the Loan, the unpaid principal balance of the Loan without any upfront MIP was $339,101.00 and the appraised value of the Home was $378,000.00, which should have resulted in the MIP for the Loan being calculated at 80 basis points pursuant to Mortgage Letter 2017-07 issued by the U.S. Department of Housing and Urban Development (HUD).

28.     Rocket, however, based the MIP calculation on the purchase price of the Home, $351,400.00 rather than the appraised value of the Loan, which resulted in the MIP for the Loan being calculated at 85 basis points pursuant to Mortgage Letter 2017-07 issued by HUD.

**(The Modifications and Bankruptcy)**

29.     Rome and Rocket entered into a Loan Modification Agreement effective November 1, 2019 (the "First Modification") along with a Partial Claims Mortgage in the amount of $79,068.26 (the "First Partial Claim"). *See*, a copy of the First Modification, attached as **Exhibit 1**; *see also*, a copy of the First Partial Claim, attached as **Exhibit 2**.

30.     Per the terms of the First Modification, the modified interest bearing principal balance of the Loan, as modified, was $254,266.97. *See*, Exhibit 1.

31.     On January 31, 2020, Rome filed a Chapter 7 Bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas in the case stylized as *In re: Shameela Rome*, Case No. 20-30329 (the "Bankruptcy").

32.     On or about February 17, 2020, Rocket provided Rome with a Reaffirmation Agreement for her review and execution (the "Reaffirmation") which stated that the unpaid principal balance owed on the Loan was $335,944.84 despite the Modification stating that the modified balance after the First Partial Claim was $254,266.97 and despite the amounts of the Partial Claim and the First Modification unpaid principal balance only adding up to $333,335.23. *See*, a copy of the Reaffirmation, attached as **Exhibit 3**.

33.     Rocket refused to provide a reaffirmation agreement that reflected the correct amounts despite Rome's request that they do so.

34.     On or about May 6, 2020, Rome received a discharge from the Bankruptcy.

35.     In June 2020, Rome experienced financial hardship due to the COVID-19 pandemic and entered into a forbearance pursuant to the CARES Act.

36.     On or about November 26, 2021 Rocket offered Rome a "FHA COVID-19 Recovery Modification with Partial Claim Modification" (respectively, the "Second Modification" and the "Second Partial Claim") modifying the terms of the Loan effective December 1, 2021. *See*, a copy of the Second Modification, attached as **Exhibit 4**; *see also*, a copy of the Second Partial Claim, attached as **Exhibit 5**.

37.     The Second Partial Claim was issued in the amount of $3,779,56, and, per the terms of the Second Modification, the modified interest bearing principal balance of the Loan was $290,680.63 comprised of capitalizing $37,180.79 to the unpaid principal balance of $253,499.84. *See*, Exhibits 4 and 5.

**(Retention of Counsel, Requests for Information, and Notices of Error)**

38.     In or around late December 2021 or early January 2022, Rome requested a payoff statement for the Loan from Rocket (the "Payoff Request")

39.     On or about January 6, 2022, Rocket sent a payoff statement to Rome (the "Payoff #1") through which Rocket claimed that the Loan was due and owing for the February 1, 2020 payment, and further claimed the following amounts due and owing:

a.   Principal Balance as of 1/06/2020: $253,499.84;

b.   Interest from 01/01/2020 to 01/07/2020: $19,168.83

c.   Fees and Costs:* $148.20

d.   Escrow Shortage: $23,694.83

e.   Mortgage Insurance (PMI/MIP) Due Through Payoff Date $221.11

f.   Total Amount to Pay in Full To Rocket Mortgage: $296,732.81.

*See*, a copy of Payoff #1, attached as **Exhibit 6**.

40. On information and belief, Payoff #1 contained an inaccurate demand for, *inter alia*, interest accrued from January 1, 2020 to January 7, 2022—specifically, while Rocket claimed such amount equaled $19,168.83, based upon an amortization table for the Loan, such amounts should have only been approximately $18,672.37 plus seven (7) days per diem interest, which amounts to less than $19,168.83. *See*, Exhibit 6.

41. Moreover, due to Rocket's erroneous calculation of Rome's monthly MIP obligations, Payoff #1 overstated such amounts as well.

42. Given that Payoff #1 was inaccurate, and given that Rome no longer had any faith in Rocket's accounting in relation to the Loan, Rome retained the services of counsel to assist in obtaining information as to the Loan and to correct any erroneous actions Rocket committed.

43. On or about February 10, 2022, Rome, through counsel, sent correspondence captioned "Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(5) for imposing fees for which a servicer had no reasonable basis to impose; Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure as required by 12 C.F.R. § 1024.38(b); and formal request to escalate case pursuant to FHA Handbook 4000.1, Section III (A)(2)(i)(xi)" ("NOE #1") via Certified Mail [Tracking No. 70201290000141258774] and via facsimile transmission to Rocket at its address and number, respectively, designated for borrowers to send notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"). *See*, a copy of NOE #1, without original enclosures, along with the Tracking Information for the same obtained from the USPS's website (www.usps.com), attached as **Exhibit 7**.

44.     Through NOE #1, Rome alleged that Rocket committed errors related to the Loan including, *inter alia*, charging improper fees to the Loan by claiming inflated or otherwise inaccurate amounts due through the Reaffirmation and charging or otherwise claiming due and owing inflated amounts for accrued interest through Payoff #1. *See*, Exhibit 7.

45.     Rocket sent correspondence dated February 17, 2022, acknowledging its receipt of NOE #1.

46.     On February 25, 2022, Rome, through counsel, sent the following pieces of correspondence to Rocket at the Designated Address via Certified U.S. Mail:

    a.   "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking the identity or and contact information for the owner, assignee, and/or investor of the Loan and an accurate payoff statement for the Loan[Tracking No. 70212720000011326703] ("RFI #1");

    b.   Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking additional information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items [Tracking No. 70212720000011326697] ("RFI #2"); and,

    c.   Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking information concerning the Loan specifically related to loss mitigation documents and communications since March 1, 2020 with a focus on details of live contacts Rocket had with Rome [Tracking No. 70212720000011326710] ("RFI #3").

*See*, copies of RFI #1, RFI #2, and RFI #3 (the "RFIs"), along with the Tracking Information for the same obtained from the USPS's website, attached as **Exhibit 8**, **Exhibit 9**, and **Exhibit 10**, respectively.

47.     Rocket received each of the RFIs at the Designated Address on or before March 1, 2022. *See*, Exhibits 8, 9, and 10.

48.     Rocket failed to send, and neither Rome nor her counsel received, any written notice from Rocket acknowledging its receipt of each of the RFIs within five (5) business days of March 1, 2022—that is, on or before March 8, 2022.

49.     Rocket sent a payoff statement dated March 9, 2022 ("Payoff #2") in partial response to RFI #1 through which Rocket claimed the following amounts due and owing:

   a.   Principal Balance as of 03/092020: $289,115.43

   b.   Interest from 03/01/2022 to 04/11/2022: $880.39

   c.   Fees and Costs:* $34.00

   d.   Escrow Shortage: $9,117.42

   e.   Mortgage Insurance (PMI/MIP) Due Through Payoff Date $442.22

   f.   Total Amount to Pay in Full To Rocket Mortgage: $299,589.46

*See*, a copy of Payoff #2, attached as **Exhibit 11**.

50.     Again, due to, *inter alia*, Rocket's erroneous calculation of Rome's monthly MIP obligations, Payoff #2 overstated such amounts and was therefore inaccurate. *See*, Exhibit 11.

51.     Rocket sent correspondence to Rome, through counsel, purportedly in response to NOE #1 dated March 4, 2022 ("Response to NOE #1"). *See*, a copy of Response to NOE #1, attached as **Exhibit 12**.

52.     Through Response to NOE #1, Rocket claimed there was "no evidence of errors on Ms. Rome's loan history".

53.     Through Response to NOE #1, Rocket, however, failed to address Rome's allegation that Rocket charged improper and excessive amounts for accrued interest on the Loan through, *inter alia*, Payoff #1. *See*, Exhibit 12.

54.     Moreover, in regard to the Reaffirmation amounts, Rocket, through Response to NOE #1, conclusorily stated that it "reviewed the information found in the Reaffirmation Documents and did not find any errors in the amounts listed within the documents." *See*, Exhibit 12.

55.     On information and belief, Rocket failed to perform a reasonable investigation into all of the errors alleged through NOE #1 as evidenced by its failure to address the Rome's allegation that Rocket charged improper and excessive amounts for accrued interest on the Loan through, *inter alia*, Payoff #1 and by claiming, without explanation, that the Reaffirmation amounts were correct when simple math dictates that Rocket was claiming $335,944.84 due and owing despite the balances for the First Modification and Partial Claim only amounting to $333,335.23.

56.     Rocket failed to provide *any documents* to Rome in support of its assertion contained in the Response to NOE #1. *See*, Exhibit 12.

57.     Accordingly, Rome sent correspondence dated March 17, 2022, to Rocket at the Designated Address via Certified U.S. Mail [Tracking No. 70212720000057055353], captioned "Request for copies of documentation and information pursuant to 12 C.F.R. § 1024.35(e)(4)" (the "NOE Request") seeking copies of documentation upon which Rocket relied in claiming through

Response to NOE #1 that no errors occurred. *See*, a copy of the NOE Request, attached as **Exhibit 13**.

58.     Rocket received the NOE Request at the Designated Address on March 23, 2022.

59.     On or about March 22, 2022, Rome, through counsel, sent correspondence captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(5) for imposition of fees and/or charges for which there was no reasonable basis to impose; errors pursuant to 12 C.F.R. § 1024.35(b)(11) for sending inaccurate periodic billings statements" ("NOE #2") to Rocket at the Designated Address via Certified Mail [Tracking No. 70212720000056880710]. *See*, a copy of NOE #2, without original enclosures, along with the Tracking Information for the same obtained from the USPS's website, attached as **Exhibit 14**.

60.     Rocket received NOE #2 at the Designated Address on or before March 29, 2022.

61.     Through NOE #2, Rome alleged that Rocket committed multiple errors related to the Loan by failing to properly calculate the amounts due and owing for Rome's MIP obligations under the Loan and by demanding and collecting those improper amounts throughout the entirety of Rocket's servicing of the Loan.

62.     Rocket sent correspondence dated April 5, 2022, to Rome, through counsel, seemingly acknowledging the NOE Request, but has not provided any further substantive response to Rome nor her counsel to date.

63.     As neither Rome nor her counsel had received any response to the request for the identity of an contact information for owner, assignee, and/or investor of the Loan as of April 6, 2022, Rome, through counsel, sent correspondence captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) and 12 U.S.C. § 2605(k)(1)(C) for failure to properly respond to a request for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. §§ 2605(k)(1)(D) and (E)"

("NOE #3") to Rocket at the Designated Address via Certified Mail [Tracking No. 70212720000159916101]. *See*, a copy of NOE #3, without original enclosures, along with the Tracking Information for the same obtained from the USPS's website, attached as **Exhibit 15**.

64.     Rocket received NOE #3 at the Designated Address on or before April 14, 2022.

65.     Through NOE #3, Rome alleged that Rocket committed an error as to the Loan by failing to properly respond to RFI #1. *See*, Exhibit 15.

66.     Rocket failed to send, and neither Rome nor her counsel received, any written notice from Rocket acknowledging its receipt of NOE #3 within five (5) business days of April 14, 2022—that is, on or before April 21, 2022.

67.     Rocket did not send any correspondence acknowledging its receipt of NOE #2, until sending correspondence dated April 25, 2022.

68.     To date, Rocket has failed to send, and neither Rome nor her counsel have received, any substantive response to the request for the identity of an contact information for owner, assignee, and/or investor of the Loan issued through RFI #1 and reiterated through NOE #3.

69.     On or about May 2, 2022, having received no substantive response to RFI #2 or the NOE Request, Rome, through counsel sent correspondence to Rocket at the Designated Address via Certified U.S. Mail [Tracking No. 70212720000159927602], captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a request for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) and renewed request for information pursuant to 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E); and, notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a request for copies of documentation and information pursuant to 12 C.F.R. § 1024.35(e)(4) and renewed request for such documentation and information requested pursuant to 12 C.F.R. § 1024.35(e)(4)" ("NOE

#4"). *See*, a copy of NOE #4, without original enclosures, along with the Tracking Information for the same obtained from the USPS's website, attached as **Exhibit 16**.

70.     Rocket received NOE #4 at the Designated Address on or before May 10, 2022.

71.     Through NOE #4, Rome alleged that Rocket committed errors as to the Loan by failing to properly respond to RFI #3 and the NOE Request and reiterated the requests for information and documentation contained in such correspondence. *See*, Exhibit 16.

72.     Rocket sent correspondence dated May 9, 2022, in response to NOE #2 (the "Response to NOE #2") whereby Rocket acknowledged that it committed an error in relation to the calculation of the amount of MIP that Rome was required to remit as a portion of her monthly payment obligations under the Loan. *See*, a copy of the Response to NOE #2, attached as **Exhibit 17**.

73.     Through the Response to NOE #2, however, Rocket indicates that it is in "the process of updating Ms. Rome's MIP with FHA" to be accurate that that she could expect to receive a refund of overpaid amounts at some point by July 6, 2022, which indicates that Rocket failed to fully correct the error and advise of the date of the correction via the Response to NOE #2 as is required pursuant to 12 C.F.R. § 1024.35(e)(1)(i)(A).

74.     Despite Rome being entitled to a correction of the errors regarding the MIP for the Loan within thirty (30) business days of March 29, 2022—that is, on or before May 10, 2022—Rocket did not provide a refund check to Rome until forwarding such a check dated June 2, 2022, well beyond the date by which Rome was entitled to a full correction.

75.     Rocket sent correspondence dated June 8, 2022, in relation to NOE #4 stating that Rocket was still reviewing the concerns therein and that a response would be forthcoming.

**IMPACT UPON AND DAMAGES SUFFERED BY ROME**

76.     Rocket has repeatedly refused to timely and properly respond to Rome's requests to provide information to which she is entitled and to otherwise timely investigate and correct errors related to her Loan.

77.     Due to Rocket's failures, and due to their history of demanding improper amounts due and owing which were either not rectified, or were only (untimely) rectified upon Rome's retention of counsel, Rome has no confidence that the accounting for her Loan is accurate.

78.     Rome believes that there are other accounting errors in Rocket's servicing of her Loan, including errors related to escrow amounts claimed due and owing following the Modification of her Loan as Rocket has recently claimed a seemingly excessive escrow shortage of $8,423.80, but is without necessary information she has requested and to which she is entitled while has precluded her opportunity to investigate the same which has, *inter alia*, caused Rome to delay a potential refinance of the Loan in an environment wherein interest rates are seemingly constantly on the rise.

79.     Rocket's improper actions caused Rome to suffer from actual damages including, but not limited to:

    a.  The loss of use of and the time loss of at least $824.28 that Rome remitted and that Rocket for improperly calculated MIP amounts for which Rome did not receive a timely correction nor a correction that has made her loss whole despite it being solely the result of Rocket's actions;

    b.  Legal fees, costs, and expenses to submit NOE #1, NOE #2, NOE #3, and NOE #4 (collectively, the "NOEs"), to Rocket in a good faith attempt to amicably resolve this matter or to have Rocket mitigate the harm caused to Rome, to which Rome has not receive proper or adequate responses;

    c.    Improper fees and charges imposed on the Loan through improper amounts claimed due and owing and capitalized to the principal balance of the Loan through the First Modification or Second Modification—and the attempted collection of such fees; and,

    d.    Severe emotional distress driven by Rocket's repeated refusal to provide adequate responses to Rome's reasonable inquiries and requests for Rocket correct their erroneous actions in a timely manner and by justified fear that she will never be able to ascertain the extent of the accounting issues as to Rocket's servicing of her Loan, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY ROCKET**

80.    Rocket's actions are part of a pattern and practice of behavior in violation of Rome's rights and in abdication and contravention of Rocket's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

81.    As of the filing of this Complaint, consumers nationwide have lodged One Hundred Twenty-Two (122) consumer complaints with the CFPB against Rocket, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

82.    As of the filing of this Complaint, consumers nationwide have lodged Two Hundred Fifty-Six (256) consumer complaints with the CFPB against Rocket, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow

account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

## COUNT ONE:
## VIOLATIONS OF 15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)(3)
### (Inaccurate Payoff(s))

83.     Rome restates and incorporates all of the statements and allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein..

84.     Rome submitted a request for a payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) on at least two (2) separate occasions in or around late December 2021 or early January 2022 and via RFI #1 on February 25, 2022. *See*, Exhibit 8.

85.     In response to Rome's requests for payoff statements Rocket failed to provide *accurate* payoff statements on at least two (2) separate occasions—as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3)—because the payoff balances stated through each of the Payoffs included inaccurate demands for MIP amounts and otherwise contained inflated claims for accrued interest amounts. *See*, Exhibits 6, 11, 12, 15, and 17.

86.     Rome was harmed as a result of the actions of Rocket as further discussed *supra*, including, but not limited to, legal fees and costs incurred with sending NOE #1 and NOE #2 which would not have been necessary but for Rocket's failure to provide accurate payoff statements. *See*, Exhibits 7 and 14.

87.     As a result of its actions, Rocket is liable to Rome for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. §§ 1640(a)(1)-(3); 15 U.S.C. § 1641.

## COUNT TWO:
## VIOLATIONS OF 12 C.F.R. § 1024.36(c) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to timely acknowledge RFI #1, RFI #2, and RFI #3)

88.     Rome restates and incorporates all of the statements and allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein..

89.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

90.     "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a)

91.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

92.     "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.36(c), *see also*, 12 U.S.C. § 2605(e)(1).

93.     The RFIs each constitute a request for information as defined by 12 C.F.R. § 1024.35(a) as each is a "written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." *See*, Exhibits 8, 9, and 10.

94.    Rome sent each of the RFIs to Rocket at the Designated Address and Rocket received each of the RFIs at the Designated Address on or before March 1, 2022. *See*, Exhibits 8, 9, and 10.

95.    Rocket failed to provide any written acknowledgment of its receipt of any of the RFIs within five (5) business days of March 1, 2022—that is, on or before March 8, 2022. *See*, Exhibits 8, 9, and 10.

96.    Rocket failed to timely acknowledge each of the RFIs as required by 12 C.F.R. § 1024.36(c) and/or 12 U.S.C. § 2605(e)(1) which constitutes three (3) clear, distinct, and separate violations of 12 C.F.R. § 1024.36(c) and 12 U.S.C. § 2605(k)(1)(E), one (1) such violation for each of the RFIs Rocket failed to timely acknowledge in writing.

97.    Rocket's actions are part of a pattern and practice of behavior in conscious disregard for Rome's rights.

98.    As a result of Rocket's actions, Rocket is liable to Rome for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1), including, but not limited to incurring legal fees and expenses for preparing and sending NOE #3 and NOE #4 which would not have been necessary but for Rocket's failure to properly acknowledge receipt of the RFIs.

99.    Additionally, Rome requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT THREE:**
**VIOLATIONS OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)**

**(Failure to timely and properly respond to RFI #1, RFI #2, and RFI #3)**

100.    Rome restates and incorporates all of the statements and allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein..

101.    12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

102.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

103.    A servicer must respond to a request for information by:

(i)     Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii)    Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

104.    Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A)    Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B)    For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

105.     Each of the RFIs is a request for information as defined by 12 C.F.R. § 1024.36(a) as it contains Rome's name, loan number, property address, and request information related to the Loan. *See*, Exhibits 8, 9, and 10.

106.     Rome sent each of the RFIs to Rocket at the Designated Address and Rocket received each of the RFIs at the Designated Address on or before March 1, 2022. *See*, Exhibits 8, 9, and 10.

107.     Through RFI #1, Rome requested that Rocket provide the identity of and contact information for the owner or investor of the Loan. *See*, Exhibit 8.

108.     Rocket was required to provide the identity of and contact information for the owner or investor of the Loan within ten (10) business days of March 1, 2022—on or before March 15, 2022. *See*, Exhibit 8; 12 C.F.R. § 1024.36(d)(2)(i)(A).

109.     Rocket did not provide the identity of and contact information for the owner or investor of the Loan within ten (10) business days of March 1, 2022 as required by 12 C.F.R. § 1024.36(d), nor has Rome or her counsel received any such response.

110.     Rocket's failure to provide a timely written response to RFI #1 constitutes a violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k) and has caused Rome to suffer actual damages as detailed, *supra*, including, but not limited to incurring legal fees and expenses for preparing and sending NOE #3 which would not have been necessary but for Rocket's failure to properly respond to RFI #1.

111.     Through RFI #2, Rome requested that Rocket provide information and/or documentation related to the Loan, including, a life of loan transaction history, servicing notes, any broker's price opinions, the physical location of the original note, a copy of the original note,

Rocket's two most recent escrow analyses, a reinstatement quote, and information related to loss mitigation. *See*, Exhibit 9.

112.    Through RFI #3, Rome requested that Rocket provide information and/or documentation related to the Loan specifically related to loss mitigation documents and communications since March 1, 2020 with a focus on details of live contacts Rocket had with Rome. *See*, Exhibit 10.

113.    Rocket was required to provide a written response to RFI #1 and RFI #2 within thirty (30) business days of March 1, 2022—on or before April 12, 2022. *See*, Exhibits 8 and 9; 12 C.F.R. § 1024.36(d)(2)(i)(B).

114.    Rocket did not provide a written response to either RFI #1 and RFI #2 within thirty (30) business days of March 1, 2022 as required by 12 C.F.R. § 1024.36(d), nor has Rome or her counsel received any such response.

115.    Rocket's failure to provide timely written responses to RFI #1 and RFI #2 constitute two (2) violations of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k), one (1) such violation for each of the RFIs to which Rocket failed to properly respond, and has caused Rome to suffer actual damages as detailed, *supra*, including, but not limited to incurring legal fees and expenses for preparing and sending NOE #5 which would not have been necessary but for Rocket's failure to properly respond to RFI #1 and RFI #2.

116.    Rocket's actions are part of a pattern and practice of behavior in conscious disregard for Rome's rights and in abdication of Rocket's obligations under RESPA and Regulation X.

117.    Rocket's conduct as pleaded, *supra*, shows a conscious disregard for Rome's rights and Rocket's obligations under RESPA and Regulation X.

118.     As a result of Rocket's actions, Rocket is liable to Rome for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

119.     Additionally, Rome requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT FOUR:
### VIOLATIONS OF 12 C.F.R. § 1024.35(d) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to timely acknowledge NOE #3)

120.     Rome restates and incorporates all of the statements and allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein..

121.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

122.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

123.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

124.     "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.35(d), *see also*, 12 U.S.C. § 2605(e)(1).

125.    NOE #3 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 15.

126.    Rome sent NOE #3 to Rocket at the Designated Address and Rocket received NOE #3 at the Designated Address on or before April 14, 2022. *See*, Exhibits 15.

127.    Rocket failed to send, and neither Rome nor her counsel received, any written notice from Rocket acknowledging its receipt of NOE #3 within five (5) business days of April 14, 2022—that is, on or before April 21, 2022.

128.    Rocket failed to timely acknowledge NOE #3 as required by 12 C.F.R. § 1024.35(d) and/or 12 U.S.C. § 2605(e)(1) which constitutes violations of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k)(1)(E).

129.    Rocket's actions are part of a pattern and practice of behavior in conscious disregard for Rome's rights.

130.    As a result of Rocket's actions, Rocket is liable to Rome for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

131.    Additionally, Rome requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT FIVE:**
**VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)**

**(Failure to timely and/or properly respond to NOE #1, NOE #2, and NOE #3)**

132.    Rome restates and incorporates all of the statements and allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein..

133.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

134.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

135.    A servicer must respond to a notice of error by either:

(A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

136.    A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A)   Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B)   Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C)   For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

137.    "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

138.    A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

139.    Each of the NOEs constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibits 7, 14, and 15.

140.    Rome sent each of the NOEs to Rocket at the Designated Address and Rocket received each such notice at such address.*See*, Exhibits 7, 14, and 15.

141.    Through NOE #1, Rome alleged that Rocket committed errors related to the Loan including, *inter alia*, charging improper fees to the Loan by claiming inflated or otherwise inaccurate amounts due through the Reaffirmation and charging or otherwise claiming due and owing inflated amounts for accrued interest through Payoff #1. *See*, Exhibit 7.

142.    Rocket, through Response to NOE #1, failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). *See*, Exhibit 12.

143.    Through Response to NOE #1, Rocket claimed there was "no evidence of errors on Ms. Rome's loan history".

144.     Through Response to NOE #1, Rocket, however, failed to address Rome's allegation that Rocket charged improper and excessive amounts for accrued interest on the Loan through, *inter alia*, Payoff #1. *See*, <u>Exhibit 12</u>.

145.     Moreover, in regard to the Reaffirmation amounts, Rocket, through Response to NOE #1, conclusorily stated that it "reviewed the information found in the Reaffirmation Documents and did not find any errors in the amounts listed within the documents." *See*, <u>Exhibit 12</u>.

146.     On information and belief, Rocket failed to perform a reasonable investigation into all of the errors alleged through NOE #1 as evidenced by its failure to address the Rome's allegation that Rocket charged improper and excessive amounts for accrued interest on the Loan through, *inter alia*, Payoff #1 and by claiming, without explanation, that the Reaffirmation amounts were correct when simple math dictates that Rocket was claiming $335,944.84 due and owing despite the balances for the First Modification and Partial Claim only amounting to $333,335.23.

147.     Rocket received NOE #2 at the Designated Address on or before March 29, 2022.

148.     Through NOE #2, Rome alleged that Rocket committed multiple errors related to the Loan by failing to properly calculate the amounts due and owing for Rome's MIP obligations under the Loan and by demanding and collecting those improper amounts throughout the entirety of Rocket's servicing of the Loan.

149.     Rocket sent Response to NOE #2 on or about May 9, 2022, whereby Rocket acknowledged that it committed an error in relation to the calculation of the amount of MIP that Rome was required to remit as a portion of her monthly payment obligations under the Loan. *See*, <u>Exhibit 17</u>.

150.     Rocket, through Response to NOE #2 failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). *See*, Exhibit 17.

151.     Through the Response to NOE #2, Rocket indicates that it is in "the process of updating Ms. Rome's MIP with FHA" to be accurate that that she could expect to receive a refund of overpaid amounts at some point by July 6, 2022, which indicates that Rocket failed to fully correct the error and advise of the date of the correction via the Response to NOE #2 as is required pursuant to 12 C.F.R. § 1024.35(e)(1)(i)(A).

152.     Despite Rome being entitled to a correction of the errors regarding the MIP for the Loan within thirty (30) business days of March 29, 2022—that is, on or before May 10, 2022—Rocket did not provide a refund check to Rome until forwarding such a check dated June 2, 2022, well beyond the date by which Rome was entitled to a full correction.

153.     Rocket received NOE #3 at the Designated Address on or before April 14, 2022.

154.     Through NOE #3, Rome alleged that Rocket committed an error as to the Loan by failing to properly respond to RFI #1. *See*, Exhibit 15.

155.     Rocket failed to provide a written response to NOE #1 within thirty (30) business days of receiving NOE #1—that is, on or before May 26, 2022— as required by 12 C.F.R. § 1024.35(e)(1). *See*, 12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

156.     Rocket's failure to timely and properly respond to each of the NOEs, by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through each of the NOEs, constitute three (3) violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Rome has suffered actual damages as detailed, *supra*.

157.    Rocket's actions are part of a pattern and practice of behavior in conscious disregard for Rome's rights.

158.    Rocket's conduct as pled, *supra*, shows a conscious disregard for Rome's rights.

159.    As a result of Rocket's actions, Rocket is liable to Rome for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

160.    Additionally, Rome requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT SIX:
## VIOLATIONS OF 12 C.F.R. § 1024.35(e)(4) AND 12 U.S.C. § 2605(k)

### (Failure to timely respond to the NOE Request)

161.    Rome restates and incorporates all of the statements and allegations contained in paragraphs 1 through 82 in their entirety, as if fully rewritten herein..

162.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

163.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

164.    A servicer is required to provide to a borrower, at no charge:

[C]opies of documents and information relied upon by the servicer in making its determination that no error occurred within 15 days (excluding legal public holidays, Saturdays, and Sundays) of receiving the borrower's request for such documents. A servicer is not required to provide documents relied upon that constitute confidential, proprietary or privileged information. If a servicer withholds documents relied upon because it has determined that such documents constitute confidential, proprietary or privileged information, the servicer must

notify the borrower of its determination in writing within 15 days (excluding legal public holidays, Saturdays, and Sundays) of receipt of the borrower's request for such documents.

12 C.F.R. § 1024.35(e)(4).

165.    A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

166.    NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 7.

167.    Rome sent NOE #1 to Rocket at the Designated Address and Rocket received such notice at such address. *See*, Exhibit 7.

168.    Rocket sent Response to NOE #1 to Rome, through counsel, on or about March 4, 2022. *See*, Exhibit 12.

169.    Through Response to NOE #1, Rocket claimed there was "no evidence of errors on Ms. Rome's loan history".

170.    Rocket failed to provide *any documents* to Rome in support of its assertion contained in the Response to NOE #1. *See*, Exhibit 12.

171.    Accordingly, on or about March 17, 2022, Rome sent "NOE Request") seeking copies of documentation upon which Rocket relied in claiming through Response to NOE #1 that no errors occurred. *See*, Exhibit 13.

172.    Rocket received the NOE Request at the Designated Address on March 23, 2022.

173.     Rocket was required to respond to the NOE Request in compliance with 12 C.F.R. § 1024.35(e)(4) within fifteen (15) days of receipt of the same—that is, on or before April 13, 2022.

174.     To date, Rocket has failed to provide any substantive response to the NOE Request.

175.     Rocket's failure to timely and properly respond to each of the NOEs, by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through each of the NOEs, constitute three (3) violations of 12 C.F.R. § 1024.35(e)(4) and 12 U.S.C. § 2605(k) and, as a result, Rome has suffered actual damages as detailed, *supra*, including but not limited to incurring legal fees and expenses for preparing and sending NOE #4 which would not have been necessary but for Rocket's failure to properly respond to the NOE Request.

176.     Rocket's actions are part of a pattern and practice of behavior in conscious disregard for Rome's rights.

177.     Rocket's conduct as pled, *supra*, shows a conscious disregard for Rome's rights.

178.     As a result of Rocket's actions, Rocket is liable to Rome for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

179.     Additionally, Rome requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Shameela Rome prays that this Court grant judgment against Defendant Rocket Mortgage, LLC, f.k.a. Quicken Mortgage, LLC and award her the following:

A.      Actual damages from Defendant Rocket Mortgage, LLC, f.k.a. Quicken Mortgage, LLC in an amount to be determined at trial for the allegations contained in Counts One through Six;

B.      An award of statutory damages of Four Thousand Dollars ($4,000.00) from Defendant Rocket Mortgage, LLC, f.k.a. Quicken Mortgage, LLC for each violation of TILA contained in Count One;

C.      An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant Rocket Mortgage, LLC, f.k.a. Quicken Mortgage, LLC for each violation of RESPA contained in Counts Two through Six for a total of Twenty-Two Thousand Dollars ($22,000.00);

D.      For attorney's fees and costs as to Counts One through Six; and,

E.      For such other relief which this Court may deem appropriate.


## JURY DEMAND

Plaintiff Shameela Rome hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

/s/ Claudia P. Brice
Claudia P. Brice, Esq. (00793383)
BRICE LAW, PLLC
6440 N. Central Expressway
Suite 900G
Dallas, TX 75206
CBrice@advocateattorneys.com

Marc E. Dann (pro hac vice anticipated)
Daniel M. Solar (pro hac vice anticipated)
DANNLAW
15000 Madison Avenue

Lakewood, OH 44107
Office: (216) 373-0539
E-Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff Shameela Rome*