UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **SHAMEELA ROME**, | § § | |
| Plaintiff, | § § | Civil Action No. 4:22-cv-00588-SDJ-CAN |
| v. | § § | |
| **ROCKET MORTGAGE, LLC**, | § § | |
| Defendant. | § § | |

### PLAINTIFF SHAMEELA ROME'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE DATED NOVEMBER 28, 2023

Plaintiff Shameela Rome ("Rome"), through counsel, respectfully objects to the Report and Recommendation of Magistrate Judge Aileen Goldman Durrett (the "Report" or Doc. 64) and respectfully requests that this Court reject the Report in its entirety, as follows:

### STANDARD OF REVIEW AND ARGUMENT

A judge may designate a magistrate judge to submit proposed findings and recommendations of a motion for summary judgment. 28 U.S.C. § 636.

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636; *see also* Fed. R. Civ. P. 72(b).

**A.      Rome Objects to the Recommendation that She Lacks Standing.**

    **1.      Rocket's Failure to Fully Correct the Accounting on Rome's Mortgage Loan.**

1

In the Amended Complaint, Rome advances five categories of damages: (1) The Loss of use of and time loss of at least $824.28, to which she did not receive a timely correction nor was she made whole; (2) Attorneys' fees and costs associated with the preparation and mailing of notices of error and a request for copies of documentation; (3) Improper fees and charges imposed on her loan; (4) Severe emotional distress; and (5) Being prevented from refinancing the loan.[1] (Doc. 29, ¶¶ 78-79).

Rocket only challenged three of these categories in its Motion for Summary Judgment (the "MSJ"). Rocket's argument that Rome lacked standing to pursue her TILA and Regulation Z claim only addressed legal fees and costs and her attempts to refinance. (Doc. 46, pp. 14-15). Rocket's similar argument concerning Rome's RESPA and Regulation X claims only addressed legal fees and costs, emotional distress, and her attempts to refinance. (Doc. 46, pp. 22-28). However, the Magistrate Judge addressed, *sua sponte*, all of Rome's categories of damages in the context of both her TILA and RESPA claims, without giving her the opportunity to respond to the *sua sponte* concerns about standing. *See Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 270, 135 S. Ct. 1257, 1269 (2015) (limiting the district court's authority to "act[] *sua sponte*" without first giving the plaintiff "an opportunity to provide evidence" that it satisfied the standing requirement at issue).

Rome argued in her opposition that the check sent by Rocket did not resolve all the issues she had with her loan's accounting nor did it fully compensate her for all the damages she incurred. (Doc. 49, p. 29); *see Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"). At her deposition, Rome testified to the same: Her mortgage statements had inaccurate

---

[1] Rome is abandoning her claim to damages for the lost opportunity to refinance.

information, her escrow account balance showed zero, and her payments increased by hundreds of dollars. She testified that she spent hours trying to bring this issue to Rocket's attention and has not been compensated for anything beyond the $824.28. Had Rome been put on notice that all of her damage categories were being challenged, she could have submitted further evidence that showed why Rocket's refund check did not fully correct her loan's accounting.

### 2. Legal Fees and Costs Associated with Sending Letters to Rocket.

In the MSJ, Rocket argued that all of Rome's legal costs and fees were the "byproduct" of this lawsuit. (Doc. 46, p. 14). This assumes that Rome hired counsel to sue Rocket, when she has continuously stated that the original purpose was to assist with requesting information related to her loan and obtain the needed corrections to her account. Rome, through counsel, used the statutory and regulatory schemes of TILA and RESPA to attempt to achieve that goal. When Rocket failed to provide accurate information through Payoff #2, she sent a notice of error. If a borrower receives an inaccurate payoff statement that makes a claim for improper fees, the borrower is permitted to send a notice of error asserting such error pursuant to 12 C.F.R. § 1024.35(b)(5), (6), or (11). On or about March 22, 2022, Rome sent NOE #2 to Rocket asserting that her loan's accounting and Payoff #2 were inaccurate. The Report's conclusion that NOE #2 was not sent to enforce Rome's TILA or Regulation Z rights is inaccurate and unsupported.

15 U.S.C. § 1640(a)(1) allows an individual to require "any actual damage sustained by such person as a result of the failure." 15 U.S.C. § 1640(a)(3) provides for "the costs *of the action*, together with a reasonable attorney's fees." (emphasis added). Thus, to be subject to § 1640(a)(3), the attorneys' fees and costs must be incurred in relation to an action. When Rocket provided Payoff #2 dated March 9, 2022, there was no pending action, as this matter was filed on July 13, 2022. Even though Rome could have filed a lawsuit without sending NOE #2, she elected to

exercise her statutory and regulatory right to have her servicer correct errors with her account. When Rocket failed to correct the errors asserted by NOE #2 and otherwise failed to perform a reasonable investigation, then she decided to bring the instant lawsuit. Had Rocket fully corrected the account and fully compensated Rome, her damages pursuant to TILA would have been mitigated and her claim pursuant to RESPA would not be actionable. Because Rocket failed to provide an accurate payoff statement, then failed to correct the error, she ***ultimately*** initiated litigation. As the Court is required to view the evidence in the light most favorable to the nonmovant and construe all reasonable inferences in the nonmovant's favor, the Magistrate Judge's decision to construe the word "ultimately" in Rocket's favor, without Rocket even citing to the interrogatory answer, must be rejected. *See Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021).

    Rome incurred attorneys' fees and postage costs, some which were related to the drafting and mailing of NOE #2, which readily qualify as monetary and tangible harm. The Report questions her deposition testimony. Rome testified that she paid $2,500 around the time she retained counsel. As there was no pending lawsuit, let alone any actionable claim at the time, a logical inference would be that this money went towards the investigation of her mortgage servicing claims, through the statutory and regulatory schemes of TILA and RESPA. As noted by the Report, Rocket did not rely on deposition testimony concerning Rome's contingency fee agreement. (Doc. 64, p. 14 n. 1). Although the Report states that the Court will not "scour the record" for evidence in support of Rome's claims, the Report has done just that repeatedly for the movant.[2] The issue briefed by the parties was if ***any*** attorneys' fees and costs could support Article III standing and qualify as actual damages. The nature of Rome's incurred and/or paid attorneys'

---

[2] Rome disagrees that this evidence supports the Magistrate Judge's conclusion.

4

fees and costs was not an issue briefed by the parties. As such, the Magistrate Judge should have given Rome the opportunity to submit supporting evidence that would delineate the amounts related to this action and those that are not.

The same analysis applies to Counts III, V, and VI. As a result of Rocket's failures to timely and properly respond to the RFIs, Rome sent NOE #3 and NOE #4 to Rocket. (Doc. 49, p. 26). As a result of Rocket's failure to timely and properly respond to NOE #1, Rome sent the NOE Request and NOE #2 to Rocket. (Doc. 49, pp. 27-28). As a result of Rocket's failure to timely and properly respond to the NOE Request, Rome sent NOE #4 to Rocket. (Doc. 49, p. 29). As noted in her opposition, Counts II and IV are evidence of Rocket's pattern or practice of noncompliance with RESPA and Regulation X. (Doc. 49, pp. 25-26).

### 3. Severe Emotional Distress.

"On summary judgment, all facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings." *Seigler v. Wal-Mart Stores Tex.*, 30 F.4th 472, 476-477 (5th Cir. 2022) (citing *Deville v. Marcantel*, 567 F.3d 156, 163-164 (5th Cir. 2009)). "A district court makes an improper credibility determination when it 'weighs the evidence and resolves disputed issues in favor of the moving party' and chooses 'which testimony to credit and which to discard.'" *Buckhanan v. Shinseki*, 665 F. App'x 343, 347 (5th Cir. 2016) (quoting *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016)).

The Report improperly labels Rome's deposition testimony as "subjective" and thus made an improper credibility determination. *See Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) ("But self-serving evidence may not be discounted on that basis alone. How much weight to credit self-interested evidence is a question of credibility, which judges may not evaluate at the summary judgment stage.").

5

**B.      Rome Objects to the Recommendation that her RESPA and Regulation X Claims Fail as a Matter of Law.**

Without any supporting authority, the Report states: "Because Plaintiff does not assert that she sent QWRs to Defendant, § 2605(f) of RESPA cannot be used to enforce §§ 2605(e) or (k)." (Doc. 64, p. 24). This holding is not supported by the text of the statute, regulation, or any guidance by the CFPB.

12 C.F.R. §§ 1024.35 and 1024.36 were established pursuant to 12 U.S.C. § 2605 and are subject to the express private right of action of 12 U.S.C. § 2605(f). 12 U.S.C. § 2605(k) is also subject to 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.35 concerns a servicer's receipt of, investigation into, and response to a "notice of error" (NOE). A NOE is defined as "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). 12 C.F.R. § 1024.36 concerns a servicer's receipt of and response to a "request for information" (RFI). A RFI is defined as "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a)

If a servicer receives a proper NOE or RFI at the address it designated for receipt, it must respond in accordance with 12 C.F.R. §§ 1024.35 or 1024.36, and any such failure to comply with the regulation is actionable through 12 U.S.C. § 2605(f). There is no requirement that a servicer receive a "qualified written request" (QWR) before complying with 12 C.F.R. §§ 1024.35 or 1024.36. 12 C.F.R. § 1024.35(a) instructs that a QWR that "asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section." Likewise, 12 C.F.R. § 1024.36(a) instructs that a QWR that "requests information relating to the servicing of the

6

mortgage loan is a request for information for purposes of this section." While a QWR can trigger the obligations of the above regulations, a QWR is not required. Thus, Rome could send Rocket a letter that qualifies as a NOE, QWR, *or* both, and Rocket would have to comply with the regulation. *Messina v. Green Tree Servicing, Ltd. Liab. Co.*, 210 F. Supp. 3d 992, 1007 (N.D. Ill. 2016). The proper inquiry is whether Rome's letters qualify as NOEs or RFIs.

In the MSJ, Rocket claims that RFI #1, RFI #2, and RFI #3 are not QWRs "because they do not request information related to servicing of the Loan nor assert any errors related to servicing of the Loan." (Doc. 46, p. 24). This is not the correct standard, because RFIs do not need to request information related to servicing of a loan, but *with respect to* a loan. 12 C.F.R. § 1024.36(a); *see* 78 Fed. Reg. 10696, 10761 ("While the final rule does not require that servicers undertake the information request procedures in § 1024.36(c) and (d) for oral submissions, it does not limit information requests to those related to servicing."). In her opposition, Rome establishes that RFI #1, RFI #2, and RFI #3 are proper RFIs because they requested information with respect to Rome's mortgage loan. (Doc. 49, pp. 26-27).

Rocket further claims that NOE #1, NOE #2, and NOE #3 are not QWRs because they do not assert errors relating to servicing of Rome's mortgage loan. (Doc. 46, pp. 25-27). Rome explains in her opposition why NOE #1 (Doc. 49, p. 28), NOE #2 (pp. 28-29), and NOE #3 (pp. 27, 29) assert covered errors pursuant to 12 C.F.R. § 1024.35(b). All three are proper NOEs. Rocket also claims that the NOE Request is not a QWR. 12 C.F.R. § 1024.35(e)(4) provides that "[a] servicer shall provide to the borrower, at no charge, copies of documents and information relied upon by the servicer in making its determination that no error occurred within 15 [business] days of receiving the borrower's request for such documents." There is nothing in 12 C.F.R. § 1024.35(e)(4) that requires receipt of a QWR or that the NOE Request relates to servicing.

Rome's letters, regardless of whether they are QWRs, are NOEs and RFIs for which a private right of action exists. As such, the Report's unsupported determination must be rejected.

## CONCLUSION

For the reasons discussed, *supra*, Rome asks the Court to reject the Report and grant any other relief that is just and proper.

        Respectfully submitted,

        */s/ Marc E. Dann*
        Marc E. Dann  (OH Bar No. 0039425)
        (admitted *pro hac vice*)
        Daniel M. Solar (OH Bar No. 0085632)
        (admitted *pro hac vice*)
        **DANN LAW**
        15000 Madison Ave.
        Lakewood, OH 44107
        Telephone: (216) 373-0539
        Facsimile: (216) 373-0536
        notices@dannlaw.com

        **BRICE LAW, PLLC**
        Claudia Brice (00793383)
        6440 N. Central Expressway, Ste. 900G
        Dallas, TX 75206
        Telephone: (214) 699-7138
        Facsimile: (216) 373-0536
        cbrice@bricelawtexas.com

        *Counsel for Plaintiff Shameela Rome*

## CERTIFICATE OF SERVICE

      I hereby certify that on December 11, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

                                        */s/ Marc E. Dann*
                                        Marc E. Dann  (OH Bar No. 0039425)
                                        (admitted *pro hac vice*)
                                        **DANN LAW**